IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FERNANDO MORALES, | ) | CV NO. 5:13-cv-1092-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SQUARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendant Square, Inc. ("Defendant") (Dkt. # 10).  Plaintiff Fernando Morales ("Plaintiff") filed a Response to the Motion, (Dkt. # 16), and Defendant subsequently filed a Reply (Dkt. # 19).  The Court held a hearing on Defendant's Motion to Dismiss on December 5, 2014.  At the hearing, Matthew Murrell, Esq. appeared on behalf of Plaintiff, and Stefani E. Shanberg, Esq. appeared on behalf of Defendant.  After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, GRANTS Defendant's Motion to Dismiss.

## BACKGROUND

The following facts are drawn from the Complaint and taken as true for purposes of this opinion.  Plaintiff is the owner of U.S. Patent No. 5,872,589

1

(the "'589 patent"), titled "Interactive TV System for Mass Distribution." (Compl., Dkt. # 1 ¶¶ 13, 15.)  The system allows viewers of television programs to respond to offers for products and services displayed on the television screen using a remote control.  ('589 Patent, Dkt. #1-1.)  When a viewer accepts an offer, an audible signal corresponding to a unique product or service code is picked up by a microphone and transmitted, along with the remote control indication of acceptance, by a transmitter at the viewer's location to a repeater station.  (Id.) This data is then relayed to a central data collection system where the acceptance is processed.  (Id.)

Defendant produces and sells a product, known as the "Square Reader," that allows its users to conduct credit card transactions using a smartphone or tablet.  (Compl., Dkt. # 1 ¶¶ 24–25.)  The Square Reader inserts into the headphone jack of compatible mobile devices.  (Id. ¶ 26.)  When a credit card is swiped through the Square Reader, data is sent through the jack to the mobile device.  (Id. ¶ 27.)  Using software installed on the mobile device, the device then sends data identifying the device and the terms of the credit transaction to Defendant's servers, which process the transaction.  (Id. ¶ 30–32.)

On December 3, 2013, Plaintiff filed a Complaint in this Court alleging infringement of its '589 patent by Defendant.  (Id.)  Plaintiff sought a declaration that he is the sole owner of the '589 patent, and requests damages,

attorney's fees, and an injunction against further infringement.  (Id. ¶¶ 54–57, D–H.)

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

DISCUSSION

I.     Sufficiency of the Complaint in Stating a Claim for Infringement

Direct infringement requires a single party to perform every step of a claimed method.  Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008).  Where the actions of multiple parties combine to perform every step of

a claimed method, the claim is directly infringed only if one party exercises

"control or direction" over the entire process such that every step is attributable to

the controlling party.  Id.  For direct infringement to be found when more than one

party performs the steps of a method claim, an agency relationship or other

contractual obligation to perform the steps must exist.  Centillion Data Sys., LLC

v. Qwest Commc'n Int'l, Inc., 631 F.3d 1279, 1287 (2011).

Section 271(b) provides that "[w]hoever actively induces

infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b)

(2012).  Where there has been no direct infringement, there can be no inducement

of infringement under § 271(b).  Limelight Networks, Inc. v. Akamai Tech., Inc.,

134 S. Ct. 2111, 2117 (2014).

Defendant argues that the process described by Claim 6 requires

multiple actors, and that as a result, Defendant cannot be liable for direct

infringement absent a contractual or agency relationship with a third party that

performs the other steps of the process.  (Mtn. to Dismiss, Dkt. # 10 at 9–10.)

Because Plaintiff has not alleged any such relationship, Defendant argues,

Plaintiff's claims for direct infringement must be dismissed.  (Id. at 10.)  Finally,

because there can be no contributory or inducement of infringement absent direct

infringement, Defendant argues that Plaintiff's claims for inducement and

contributory infringement must also be dismissed.  (Id. at 11.)

There is no indication on the face of Claim 6 that the claimed process inherently requires the participation of more than one party.  Claim 6 recites:

> A method of data communication comprising the steps:
>
> > generating a unique signal by receiving an audible signal from an electronic device;
> > combining the received audible signal with a unique identifier of a response unit;
> > communicating the unique signal from the response unit to a local area repeater station;
> > verifying the unique signal at the local area repeater station; and
> > communicating the generated signal from the repeater station to a data center for processing.

('589 Patent, Dkt. # 1-1 at 10:29–40.)  While Defendant asserts that Claim 6 is performed by multiple computers and that "operation of these computers requires at least two parties," it provides no support for this assertion.  The specification's description of the relevant equipment used in each step of the process contains no indication that each form of equipment, and thus each step of the process, could not be operated and carried out by one party.  (Id. at 14–15.)  Defendant instead argues that Plaintiff does not allege that Defendant or its agents operate a "local area repeater station," and thus fails to allege that Defendant or its agents directly infringe the patent by performing every step of the claimed method.  (Mtn. to Dismiss, Dkt. # 10 at 10.)

A plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent.  K-Tech Telecomm., Inc.

v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013).  Form 18 sets

forth a sample complaint for direct patent infringement, and requires (1) an

allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a

statement that defendant has been infringing the patent by making, selling, and

using [the device] embodying the patent; (4) a statement that the plaintiff has given

the defendant notice of its infringement; and (5) a demand for an injunction and

damages.  Id. at 1283; Fed. R. Civ. Pro. Form 18.

Form 18 is relevant because Federal Rule of Civil Procedure 84 states

that "the forms in the Appendix suffice under these rules and illustrate the

simplicity and brevity that these rules contemplate."  Fed. R. Civ. P. 84; In re Bill

of Lading Transmission & Processing Sys. Patent Litigation, 681 F.3d 1323, 1334

(Fed. Cir. 2012).  "Rule 84, combined with guidance from the Advisory

Committee Notes to the 1946 amendment of Rule 84, makes clear that a proper use

of a form contained in the Appendix of Forms effectively immunizes a claimant

from attack regarding the sufficiency of the pleading."  K-Tech Telecomm.,714

F.3d at 1283.  Because changes to the Federal Rules of Civil Procedure must be

obtained by the process of amending the Federal Rules, not by judicial

interpretation, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination

Unit, 507 U.S. 163, 168 (1993), to the extent any conflict exists between pleading

requirements under Supreme Court precedent and those allowed by the Forms, the

Forms control.  <u>K-Tech Telecomm.</u>, 714 F.3d at 1283.

   Plaintiff's Complaint satisfies the Form 18 pleading requirements.

Plaintiff has alleged that this Court has jurisdiction, (Compl., Dkt. # 1 ¶¶ 5–12),

that he owns the asserted patent, (<u>id.</u> ¶¶ 2, 15), that Defendant has infringed the

'589 patent by making, using, and offering for sale a specific device and

corresponding software, (<u>id.</u> ¶ 35), and that Plaintiff has given Defendant notice of

its infringement (<u>id.</u> ¶¶ 46–47).  The Complaint also includes a demand for an

injunction and damages.  (<u>Id.</u> ¶¶ D–G).  Having complied with all of the

requirements of Form 18, Defendant's Complaint is sufficient to state a claim

against Defendant for direct infringement.

   Because Defendant's argument that Plaintiff's claims for contributory

infringement and inducement should be dismissed is based on Plaintiff's alleged

failure to plead direct infringement, which the Court has rejected, the Court will

not separately consider the sufficiency of these claims.

II. <u>Ripeness of a Motion to Dismiss under 35 U.S.C. § 101</u>

   Invalidity under Section 101 of the Patent Act is a question of law that

may be decided on the pleadings.  <u>See</u> <u>Ultramercial, Inc. v. Hulu, LLC</u>, 772 F.3d

709, 711 (Fed. Cir. 2014) (affirming district court's decision granting motion to

dismiss infringement claim for failure to state patent-eligible subject matter);

buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming district court's decision granting judgment on the pleadings for plaintiff's failure to state patent-eligible subject matter).  The Federal Circuit has made clear that "claim construction is not an inviolable prerequisite to a validity determination under § 101."  Bancorp Serv., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012).

The Federal Circuit has noted, however, that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  Id.  Plaintiff argues that consideration of patent eligibility under § 101 is premature at this stage of the litigation given the fact-intensive nature of the inquiry.  (Resp., Dkt. # 16 at 11.)  Plaintiff's Response does not, however, identify any disputed issue of fact or claim construction that requires resolution in order to determine whether Claim 6 is directed to patent-eligible subject matter.  Given the absence of such dispute and the "salutary effects" of addressing § 101 at the outset of litigation, see Ultramercial, 772 F.3d at 718–19 (J. Mayer, concurring), the Court finds that

neither separate claim construction proceedings nor further development of the

factual record is required before addressing the § 101 issue.[1]

III.   <u>Patent-eligible subject matter under 35 U.S.C. § 101</u>

Section 101 of the Patent Act provides that "[w]hoever invents or

discovers any new and useful process, machine, manufacture, or composition of

matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title."  35 U.S.C. § 101 (2012).

Analysis of whether a patent claims patent-eligible subject matter begins by

identifying whether an invention fits within one of the four statutory categories:

processes, machines, manufactures, and compositions of matter.  <u>Ultramercial,</u> 772

F.3d 709 at 713–14.

Section 101 contains an implicit exception: laws of nature, natural

phenomena, and abstract ideas are not patentable.  <u>Alice Corp. Pty. Ltd. v. CLS</u>

<u>Bank Int'l</u>, 134 S. Ct. 2347, 2354 (2014).  This exception is based in the concern

that monopolizing such "building blocks of human ingenuity" through the grant of

a patent could impede and inhibit innovation and discovery, thereby frustrating the

purpose of the patent laws.  <u>Id.</u> (citing <u>Mayo Collaborative Serv. v. Prometheus</u>

---

[1] At the hearing on the instant Motion, counsel for Plaintiff argued that a factual
inquiry is necessary to determine whether the devices included in Claim 6
constitute an inventive concept that transforms the abstract idea into a patent-
eligible invention.  Plaintiff's patent specification, discussed below, defines and
describes the devices in question sufficiently to allow the Court to make the § 101
determination without further factual development.

<u>Lab., Inc.</u>, 132 S. Ct. 1289, 1293 (2012)).  At bottom, "[t]he principle is one of balance: patents should not 'foreclose more future invention than the underlying discovery could reasonably justify.'"  <u>McRO, Inc. v. Activision Pub., Inc.</u>, No. CV 14-336-GW, 2014 WL 4759953, at *6 (C.D. Cal. Sep. 22, 2014) (quoting <u>Mayo</u>, 132 S. Ct. at 1301).

> The Supreme Court has cautioned, however, that the exception should not be allowed to swallow the rule—an invention is not rendered ineligible for patent simply because it involves an abstract concept.  <u>Id.</u>  Courts "must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention."  <u>Id.</u> (citations omitted) (quoting <u>Mayo</u>, 132 S. Ct. at 1303).  To guide in making this distinction, the Supreme Court has set forth a two-part test.  First, a court must determine whether the claims at issue are directed to one of the patent-ineligible concepts.  <u>Id.</u> at 2355 (citing <u>Mayo</u>, 132 S. Ct. at 1296–97).  If the answer is yes, the court must then ask whether additional elements in the patent claim, alone or in combination, contain an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  <u>Id.</u>

A. <u>Plaintiff's Claim is Directed to a Patent-Ineligible Concept</u>

While the Complaint does not make clear which claim of the '589

patent is asserted against Defendant, both parties' arguments address Claim 6 of

the Patent as the only claim asserted by Plaintiff.  (Mtn. to Dismiss, Dkt. # 10 at 1;

Resp., Dkt. # 16 at 2.)  Claim 6 recites:

> A method of data communication comprising the steps:
>
> generating a unique signal by receiving an audible signal from an
>     electronic device;
> combining the received audible signal with a unique identifier of a
>     response unit;
> communicating the unique signal from the response unit to a local
>     area repeater station;
> verifying the unique signal at the local area repeater station; and
> communicating the generated signal from the repeater station to a data
>     center for processing.

('589 Patent, Dkt. # 1-1 at 10:29–40.)  Defendant argues that this claim is directed

to "the abstract idea of signal processing," (Mtn. to Dismiss, Dkt. # 10 at 5), or

"the abstract idea of relaying a unique signal containing a sender's identity,"

(Reply, Dkt. # 19 at 5), and thus must be analyzed for whether it includes an

inventive concept that renders the abstract idea patentable.  Plaintiff responds that

under the case law, an abstract idea "is a basic concept that lies at the heart of an

academic discipline . . . that may be performed without a computer and is

unbounded to a particular application," and that its claim, describing "a specific

method for data communication," thus does not fall within this category.  (Resp., Dkt. # 16 at 7.)

　　　　The Supreme Court has declined to "delimit the precise contours of the 'abstract ideas' category," <u>Alice Corp. Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347, 2357 (2014), leaving it to be defined on a case-by-case basis by the lower courts.  Examining first those precedents that bind this Court, claimed processes have been found to encompass an abstract idea where they described methods of organizing human activity: for example, a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk (the idea of intermediated settlement), <u>id.</u> at 2356, a method for hedging against the financial risk of price fluctuations, <u>Bilski v. Kappos</u>, 561 U.S. 593, 609 (2010), a method for displaying an advertisement in exchange for access to copyrighted media (the idea of using an advertisement as an exchange or currency), <u>Ultramercial, Inc. v. Hulu, LLC</u>, 772 F.3d 709, 714–15 (Fed. Cir. 2014), a method by which a third party can guarantee a sales transaction, <u>buySAFE v. Google, Inc.</u>, 765 F.3d 1350, 1352 (Fed. Cir. 2014); and a method for processing information through a clearinghouse, <u>Dealertrack, Inc. v. Huber</u>, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

　　　　Another strain of cases has found that claims whose processes included mathematical equations or scientifically discovered chemical or physical

12

relationships encompassed a patent-ineligible category, although it is not altogether clear whether the relevant category in such cases is "abstract ideas" or instead "laws of nature."  See Mayo Collaborative Serv. v. Prometheus Lab., Inc., 132 S. Ct. 1289, 1293 (2012) (finding that a claim describing relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a drug will cause harm set forth laws of nature); Diamond v. Diehr, 450 U.S. 175, 178 (1981) (finding that a process for curing rubber involving use of a mathematic equation encompassed a law of nature); Parker v. Flook, 437 U.S. 584, 586 (1978) (finding a claim for a method of computing an alarm limit in the catalytic conversion of hydrocarbons using a mathematical algorithm included a law of nature); Gottschalk v. Benson, 409 U.S. 63, 71–72  (1972) (finding a claim for a method of converting binary-coded decimal numerals into pure binary numerals using a mathematical formula in a general-use computer was a claim on an idea).

Claim 6 of the '589 patent does not fit neatly into these precedents, as it describes neither a method of organizing human activity nor a mathematical equation or scientific relationship that could be termed a law of nature.  The Federal Circuit's decision in Digitech Image Tech., LLC v. Elec. for Imaging, Inc., 758 F.3d 1344 (Fed. Cir. 2014), however, indicates that the abstract ideas category is broad.  In that case, the Federal Circuit held that "fundamental concepts, by

13

themselves, are ineligible abstract ideas," <u>Digitech</u>, 758 F.3d at 1350 (citing <u>Alice Corp. Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347, 2356 (2014)), stating no limitation as to subject matter.  At issue was a claim describing a process of taking two data sets and combining them into a single data set known as a "device profile."  <u>Id.</u> at 1351.  The Federal Circuit held that the patent recited the "abstract process of gathering and combining data that does not require input from a physical device."  <u>Id.</u>

            The Court finds it instructive that recent district court opinions have taken a similar approach, finding abstract ideas in claims describing a wide variety of systems and processes.  <u>See</u> <u>Amdocs (Israel) Ltd. v. Openet Telecom, Inc.</u>, No. 1:10cv910, 2014 WL 5430956, at *6 (E.D. Va. Oct. 24, 2014) (finding a claim for a computer program to process network account information claimed the abstract concept of "correlating two network accounting records to enhance the first record"); <u>Cogent Med., Inc. v. Elsevier Inc.</u>, No. C-13-4479-RMW, 2014 WL 4966326, at *4 (N.D. Cal. Sep. 30, 2014) (finding that a patent describing a computer-based system for cataloguing information that could be tailored to individual users claimed "the abstract idea of maintaining and searching a library of information"); <u>Eclipse IP LLC v. McKinley Equip. Corp.</u>, No. SACV 14-742-GW, 2014 WL 4407592, at *7 (C.D. Cal. Sep. 4, 2014) (finding a claim for a computer-based system for communicating with a mobile device was directed to

14

"the abstract idea of asking someone whether they want to perform the task, and if they do, waiting for them to complete it, and if not, asking someone else"); Walker Digital, LLC v. Google, Inc., C.A. No. 11-319-LPS, 2014 WL 4365245, at *5 (D. Del. Sep. 3, 2014) (holding that a computer-based system for facilitating an exchange of identities between two anonymous parties described the "basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters").

Taken together, the case law suggests that a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice. See Cal. Inst. of Tech. v. Hughes Commc'ns Inc., 2:13-cv-07245-MRP-JEM, 2014 WL 5661290, at *4–6, 8–10, 13 (C.D. Cal. Nov. 3, 2014) (analyzing the evolution of Supreme Court and Federal Circuit precedent under § 101). In determining whether a claim is directed to an abstract idea, courts look past the claim language to "the purpose of the claim—in other words, what the invention is trying to achieve." Id. at 13; see also Amdocs, 2014 WL 5430956, at *6 (analyzing a claim "[o]n its face and looking past the mere claim language"); Alice Corp. Pty. Ltd., 134 S. Ct. at 2356 (finding that a claim reciting a specific, multiple-step process was drawn to the abstract concept of mitigating settlement risk using a third party).

The Court finds that here, Claim 6 of the '589 patent encompasses an abstract idea because it describes the fundamental concept of relaying a signal

containing the sender's identity.  The claim broadly describes the claimed process

as "a method of data communication," ('589 Patent, Dkt. #1-1 at 10:30), and the

steps of the process do little to circumscribe the breadth of the claim's stated

purpose.  The steps of the process can be distilled to (1) generating a unique signal

using an audible tone, and (2) relaying the signal for verification and processing

using either radio frequency or telephone lines.[2]  Claim 6, as drafted, does not limit

its data communication process to any particular application or use, but instead

simply describes, at a high level of generality, the concept of transmitting data

from one source to another through either of these two media.  (Id. at 10:31–40.)

The Court also notes the similarity of Claim 6 with the claim at issue

in CyberFone Sys., LLC v. Cellco P'ship, 885 F. Supp. 2d 710 (D. Del. 2012).

The district court in that case found that a patent's abstract nature was "plainly

apparent" where the claim recited steps by which data was obtained from

transaction information entered on and transmitted by a telephone, organized into

subsets, and sent over a channel to different destinations, "represent[ing] nothing

more than a disembodied concept of data sorting and storage."  Id. at 719.  Here,

the "electronic device" that generates the unique signal is even less specific than

---

[2] While the face of Claim 6 does not specifically identify the means of
communicating the unique signal, it does refer to "response unit," a "local area
repeater station," and a "data center."  ('586 Patent, Dkt. # 1-1 at 10:33–40.)  The
description of these terms in the Patent's specification explain that the local area
repeater and data center can communicate using either satellite or telephone
communication.  (Id. at 3:58–4:5, 4:20–32.)

the telephone in <u>CyberFone</u>, and the means of transmission is drawn more broadly to include radio frequency as well as telephone lines.  ('586 Patent, Dkt. #1-1 at 10:31–40.)[3]

        Because the Court finds that Plaintiff's claim is drawn to an abstract concept, the Court must move to the second step of the analysis: determining whether the claim includes an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  <u>Alice Corp. Pty. Ltd.</u>, 134 S. Ct. at 2355.

### B. <u>Plaintiff's Claim Does Not Include an Inventive Concept</u>

        A process reciting one of the patent-ineligible concepts is not patentable "unless that process has additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize" the concept itself.  <u>See</u> <u>Mayo</u>, 132 S. Ct. at 1297.  "Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" <u>Ultramercial, Inc. v. Hulu, LLC</u>, No. 2010-1544, 2014 WL 5904902, at *5 (Fed. Cir. Nov. 14, 2014) (quoting <u>Mayo</u>, 132 S. Ct. at 1298).  "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural

---

[3] <u>CyberFone</u> was decided before the Supreme Court's decisions in <u>Mayo</u> and <u>Alice Corp. Pty. Ltd.</u>  Those decisions, however, did not redefine the "abstract ideas" category of unpatentable subject matter.  They instead clarified the analysis for distinguishing between patents that claim unpatentable subject matter from those that claim patent-eligible applications of those concepts.  <u>Alice Corp. Pty. Ltd.</u>, 134 S. Ct. at 2355.  The district court's opinion in <u>CyberFone</u> thus remains persuasive.

phenomena, and abstract ideas cannot make those laws, phenomena, and ideas

patentable." Mayo, 132 S. Ct. at 1300.  Conventional steps include those "well

known in the art" as well as necessary steps which a person or device must perform

in order to apply the concept.  Id. at 1298.

      The Supreme Court recently held that the recitation of a generic

computer with which to implement an abstract idea in a method claim cannot

transform the idea into a patent-eligible invention.  See Alice Corp. Pty. Ltd., 134

S. Ct. at 2355.  The Court reasoned that "given the ubiquity of computers . . .

wholly generic computer implementation is not the sort of 'additional featur[e]'

that provides any 'practical assurance that the process is more than a drafting effort

designed to monopolize the [abstract idea] itself.'"  Id. at 2358 (alteration in the

original) (citation omitted) (quoting Mayo, 132 S. Ct. at 1297).  While some

abstract ideas may become patentable if they are tied to uniquely designed

machines with specific purposes, generic recitation of hardware will not save a

claim.  Cal. Inst. of Tech. v. Hughes Commc'ns Inc., 2:13-cv-07245-MRP-JEM,

2014 WL 5661290, at *9 (C.D. Cal. Nov. 3, 2014) (citing Alice Corp. Pty. Ltd.,

134 S. Ct. at 2360).

      When analyzing a process under this step, the elements of the claim

must be considered individually and as an ordered combination.  Id. at *14 (citing

Diamond v. Diehr, 450 U.S. 175, 188 (1981)).  Even where elements considered

individually are conventional, the elements when considered as a combination may be unconventional.  Id.

Plaintiff argues that the inclusion of "electronic components" and "specific pieces of hardware" in Claim 6 are additional features sufficient to ensure that the claim does not monopolize the abstract idea to which it is directed.  (Resp., Dkt. # 16 at 9, 10–11.)  The hardware referred to includes a "response unit," a "local area repeater," and a "data center."  (Patent, Dkt. # 1-1 at 10:33–40.)  As described in the specification, the response unit consists of an "answering device" and an antenna that transmits data over a unidirectional radio frequency link.  (Id. at 3:46–50, 4:33–39.)  The answering device is itself comprised of a microphone, a "conventional demodulator," an infrared receiver, and a microprocessor.  (Id. at 5:4–19.)

A "typical" local area repeater is described as including an antenna and receiver that receive data from response units, a computer that processes the received data, and either a "very small aperture terminal" ("VSAT") unit and antenna for satellite communication with the data center or a modem to allow for communication using telephone lines.  (Id. at 4:33–39.)  Finally, the data center consists of "a conventional network control center with a mainframe computer," a directional parabolic antenna to receive satellite signals, and if telephone lines are

used for communication, "a conventional packet switcher" and "conventional media" for recording response transactions.  (Id. at 3:58–4:12.)

The inclusion of these components in the process described by Claim 6, all of which consist of generic hardware, is not an inventive concept sufficient to transform the abstract idea into a patentable claim.  Antennae to send and receive radio frequencies, computers to verify and process data, VSAT equipment to allow for satellite communication, modems for telephonic communication, and the conventional electronics included in the "answering device" are all well-known in the prior art—indeed, a previous patent issued to Plaintiff described a closely similar satellite communication system employing the same equipment.  (Id. at 1:18–34.)  The listed devices are included in the claimed process for their generic purposes, and as such represent "well-understood, conventional, routine activity." Mayo, 132 S. Ct. at 1298.  Considering the elements of Claim 6 as an ordered combination adds nothing to the fundamental concept of relaying a signal containing the sender's identity—indeed, it is the elements together, taken in order, that describe the fundamental concept itself.  The claim thus does not include an inventive concept sufficient to transform the abstract idea into a patent-eligible application of the idea.

<u>CONCLUSION</u>

In short, Plaintiff's claim is simply too broadly drawn to withstand the scrutiny required by the Supreme Court's admonition that patents not impede innovation by preempting the basic tools of scientific and technological work.  <u>See Alice Corp. Pty. Ltd.</u>, 134 S. Ct. 2347 at 2355.  Because Claim 6 fails the two-step test articulated by the Supreme Court for analysis of patent-eligible subject matter, the Court finds the claim to be invalid under § 101.

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss.

IT IS SO ORDERED.

DATED: San Antonio, Texas, December 30, 2014.

_____
David Alan Ezra
Senior United States Distict Judge